The STATE of Ohio, Appellee,

v.

DAVIES, Appellant.

[Cite as *State v. Davies* (2001), 145 Ohio App.3d 630.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 20456.

Decided Sept. 12, 2001.

*Matthew Fortado,* for appellant.

*Sherri Bevan Walsh,* Summit County Prosecuting Attorney, and *Philip D. Bogdanoff,* Assistant Prosecuting Attorney, for appellee.

---

WHITMORE, Judge.

Appellant, Brian W. Davies, has appealed a decision of the Summit County Common Pleas Court that denied his motion to suppress all of the state's evidence. This court affirms.

## I

James Pannunzio and his wife, Dina Giampetro, were having marital troubles. James suspected Dina was having an affair. Investigating his suspicions, James began secretly tape recording conversations of calls on the couple's home telephone line. In listening to tape recordings of conversations between Dina and her coworker, Patricia Houck, James learned about allegations of illegal prescription drug writing and drug abuse by Patricia Houck and Doctor Brian Davies. Both Dina and Patricia Houck worked as nurses in Dr. Davies' office.

In or around December 1998, James Pannunzio telephoned Detective Robert J. Bailey of the Akron Police Department and left a message requesting Detective Bailey to return his call. Detective Bailey returned the call but did not reach James personally, so he left a message. James did not respond to the call. However, some short time later a relative of James called Detective Bailey and informed Detective Bailey that James had called the detective to report the allegations of illegal drug activity taking place in Dr. Brian Davies' office but that James had gotten "cold feet." The relative further informed Detective Bailey that James learned of the allegations by listening to tapes he had secretly recorded of calls between his wife Dina and Patricia Houck. Detective Bailey retorted that he did not want to hear any information that came from the tapes but said that he would like to speak with James.

In January 1999, James contacted Detective Bailey and reported the allegations of prescription drug abuse. James relayed specific names of some prescription drugs. James told Detective Bailey that his wife Dina had told him this information. There was no mention of the tapes. Detective Bailey then contacted Robert Mandi, a pharmacist specialist, for advice on investigating prescription drug writing. Mandi recommended calling the Ohio Board of Pharmacy to obtain a list of all of the prescriptions for controlled substances that had been written by Dr. Davies and filled in Summit County. In response to Detective Bailey's request, the Ohio Board of Pharmacy sent a mailer to all the pharmacies in

Summit County requesting a reply from them as to any controlled substances they filled that were written by Dr. Davies. The request produced a voluminous list.

In June 1999, Detective Bailey and James Pannunzio met face-to-face for the first time. James gave Detective Bailey specific names of people who may have been involved in having the prescriptions written in their names, which included Patty Houck's mother, Patty Houck's brother Christopher, who was the man with whom Dina allegedly was having the affair, and Patty Houck's sister, Susan Wilster. There was no mention of the tapes James had recorded. Two agents from the Ohio Board of Pharmacy then approached Susan Wilster under the pretext that they were investigating a bogus pharmacist in the area. The agents asked her what doctor she had seen, what kind of drugs she had been prescribed, and if she had been seen by Dr. Davies. Wilster said she had seen Dr. Davies a couple of years earlier for minor surgery. The agents also asked Wilster if she had ever been prescribed any kinds of injectable drugs. She replied that she had not. According to the list compiled by the pharmacies, however, Wilster was receiving an injectable form of the drug Demerol, proscribed by Dr. Brian Davies.

A search warrant was issued for Dr. Davies' office, and was executed on September 10, 1999. The warrant authorized police to search for the medical records of certain patients such as Wilster. Police were looking for proof that Davies had written prescriptions that were not for legitimate medical purposes. This search and subsequent investigations established a case against the doctor.

Davies was indicted on eighteen counts of aggravated trafficking of drugs, fourth degree felonies. He filed a motion to suppress, among other things, all of the results of the police investigations. Davies asserted that since James Pannunzio surreptitiously listened to conversations between his wife Dina and Patty Houck in violation of R.C. 2933.52, any investigation derived from information supplied by James ought to be suppressed as "fruit of the poisonous tree." The trial court held that there was indeed a violation of R.C. 2933.52 by James but found that "[t]he investigation was independent of any information derived from the illegal wiretap." The court suppressed the tapes but denied Davies' motion to suppress the results of the investigations. Davies entered a plea of no contest, and was sentenced to five years of community control. This appeal followed.

## II

### ASSIGNMENT OF ERROR

"The trial court erred in denying the motion to suppress as all evidence against appellant derived from interception of telephone communications which was

prohibited by [R.C.] 2933.52(A) and which evidence was inadmiss[i]ble pursuant to [R.C.] 2933.62(A)."

In his sole assignment of error, Davies maintains that the trial court erred in refusing to suppress all of the state's evidence, which he argues was derived solely from the illegal wiretap. His contention is that because police had no reason to suspect him of criminal conduct prior to receiving a call from James Pannunzio, and because police knew that James had obtained the information illegally, police were prohibited from investigating the allegations. The state argues that Davies does not have standing to contest the admission of the tapes or any investigation derived from information on the tapes. The state further contends that even if this court finds that Davies does have standing, this court must affirm because the issue is one of credibility.

Our standard of review of the trial court's decision on a motion to suppress is *de novo. State v. Bing* (1999), 134 Ohio App.3d 444, 448, 731 N.E.2d 266, citing *Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920. However, our review of the facts looks only for clear error, giving due weight to the trial court as to the inferences drawn from those facts. *Id.* Thus, we will accept the trial court's factual determination if it is supported by competent, credible evidence and without deference to the trial court's conclusion, we will determine "whether, as a matter of law, the facts meet the appropriate legal standard." *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172.

R.C. 2933.52 prohibits the interception of wire, oral, or electronic communications. An intercepted communication is not illegal, however, if it is secured by a private person, "provided that the person is either (1) a party to the intercepted communication or (2) obtains the permission of one of the parties to the communication, and the purpose of the interception is not to commit a crime, tort, or other injurious act." *State v. Childs* (2000), 88 Ohio St.3d 558, 567, 728 N.E.2d 379.

In the present case, the trial court found that James Pannunzio violated R.C. 2933.52 when he intercepted the communications. Neither party has contested this finding. R.C. 2933.52(A)(3) bans the use of the contents, or any evidence derived from the contents, of any wire or oral communication if obtained in violation of R.C. 2933.51 through 2933.66. There are a number of exceptions to the general use prohibition; however, none has been asserted or appears applicable in this case.

## A. Standing

The state has asserted that Davies is not an "aggrieved person" and therefore does not have standing to contest the admission of any evidence derived

from the illegal wiretap. The trial court did not expressly address the issue of standing. R.C. 2933.63(A) allows any "aggrieved person" to request the trial court "to suppress the contents, or evidence derived from the contents, of a wire, oral, or electronic communication intercepted pursuant to sections 2933.51 to 2933.66 of the Revised Code," if, among other reasons, "[t]he communication was unlawfully intercepted." R.C. 2933.63(A)(1). An "aggrieved person" is "a person who was a party to an intercepted wire, oral, or electronic communication or *a person against whom the interception of the communication was directed.*" (Emphasis added.) R.C. 2933.51(J).

The record contains insufficient evidence to determine whether James Pannunzio recorded the conversations in an attempt to find out whether Davies was the man with whom his wife was having an affair, *i.e.*, whether the interception of the calls was directed at Davies. James Pannunzio did not testify at the suppression hearing. Detective Bailey testified that James told him that he and his wife, Dina, were having "some marital problems," and that James "suspected that his wife was having an affair," and that James "originally thought that was with Dr. Davies."

Furthermore, even if Davies does not meet the definition of an "aggrieved person," R.C. 2933.62(A) bans the admission of illegally intercepted communications "in any trial, hearing, or other proceedings in or before any court."

## B. Results of the Investigation

■ Davies has asserted that the trial court erred in finding that the investigation was independent of the illegal wiretap. He points to the testimony of Detective Bailey in which the detective admitted that police had no reason to suspect Davies of any illegal activity until Detective Bailey received the information from James Pannunzio, and that the investigation was a direct result of James's phone call. Davies cites *State v. Perkins* (1985), 18 Ohio St.3d 193, 18 OBR 259, 480 N.E.2d 763, and *Nix v. Williams* (1984), 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377, for support, and maintains that because all of the evidence was discovered as a consequence of the illegal wiretap, it must all be suppressed as "fruit of the poisonous tree." In opposition, the state has argued that the issue is one of credibility. The state contends that since James Pannunzio did not testify, and Detective Bailey testified that James told the Detective that Dina told him about the allegations, the court must have believed that James did not obtain the information illegally. We find both parties' reasoning to be flawed.

The Fourth Amendment has no application in this context. James Pannunzio committed the illegal act without the assistance or appeal of the government. See *United States v. Jacobsen* (1984), 466 U.S. 109, 113–114, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85, 94. See, also, *State v. Ford* (Oct. 9, 1987), Lucas App. No. L–86–

338, unreported, 1987 WL 18126 (explaining that even though evidence is secured illegally by a private person and turned over to the police, possession by the police does not invoke the exclusionary rule); and *Walter v. United States* (1980), 447 U.S. 649, 657, 100 S.Ct. 2395, 2402, 65 L.Ed.2d 410, 418 (holding that a significant expansion by police of the search that had been conducted previously by a private party must be characterized as a separate search). Davies' reliance on *Perkins* and *Nix* is therefore misplaced.

■ Accordingly, Davies' suppression motion rests completely upon the violation of Ohio's wiretapping statute and the statutory prohibition against using evidence derived from such a violation. It was Davies' burden to prove that the evidence obtained in violation of the statute should have been suppressed. *State v. Childs* (2000), 88 Ohio St.3d 558, 567, 728 N.E.2d 379.

Davies argues that he met his burden under *Childs,* and therefore the trial court was required to grant his suppression motion. *Childs* is not dispositive of the issue in this case. In *Childs,* the Supreme Court of Ohio explained that it is the burden of the party "seeking to suppress evidence allegedly obtained in violation of R.C. 2933.52(A)(1) * * * to demonstrate that the tapes were made in violation of the wiretapping statute," and that "the tapes should [be] suppressed." *Id.* at 568, 728 N.E.2d 379. The court found that Childs failed to produce evidence that neither party to the conversation consented to the taping because only one party testified. The court concluded that the tapes were not required to be suppressed because Childs failed to demonstrate that the tapes were made in violation of R.C. 2933.52(A)(1). *Id.*

Although Davies did present evidence that neither Dina nor Patty Houck consented to James's taping their conversations, this evidence is irrelevant to the present appeal because neither party has challenged the trial court's determination that the tapes were made in violation of the wiretapping statute. Rather, the issue was, given that R.C. 2933.52 was violated, whether R.C. 2933.62(A) precludes the admission of the evidence gathered as a result of the violation.

R.C. 2933.62(A) states:

"No part of the contents, and *no evidence derived from the contents,* of any intercepted wire, oral, or electronic communication shall be received in evidence in any trial * * * in or before any court * * * of this state * * * if the disclosure of that information is in violation of sections 2933.51 to 2933.66 of the Revised Code." (Emphasis added.)

The trial court found that the statute did not prohibit the admission of the results of the investigation because the "[t]he investigation was independent of any information derived from the illegal wiretap." Davies claims that this finding is in direct contrast to Detective Bailey's testimony that the sole reason for the

investigation was the information he received from James. We find this mistake of fact to be irrelevant because the issue is not whether the *investigation* was derived from the contents of the illegal tap. Rather, the issue is whether the *evidence* was derived from the contents of the illegal tap. R.C. 2933.62(A).

■■ This court finds that the evidence was not derived from the contents of the illegal tapes; the evidence was derived from subsequent in-depth investigations. For purposes of R.C. 2933.62(A), this court interprets "evidence derived from the contents" to mean evidence gathered as a direct result of the violation. We reject Davies' contention that police are barred from ever investigating any allegations of which they innocently learn, which were originally discovered by private citizens through some illegal means. To so hold might paralyze law enforcement. Our interpretation is supported by the only case factually similar to the case *sub judice, State v. Thomas* (June 28, 1989), Washington App. Nos. 88CA22 and 88CA29, unreported, 1989 WL 74879, appeal not allowed (1989), 46 Ohio St.3d 707, 545 N.E.2d 1280, certiorari denied (1990), 493 U.S. 1077, 110 S.Ct. 1129, 107 L.Ed.2d 1035.

In that case, as condition of his probation, Thomas was to abstain from using any nonprescribed hallucinogen and to have no contact with his former girlfriend, Offerman, or her present boyfriend, Huff. One day while Thomas was talking with Offerman on the telephone, Huff was secretly listening to their conversation on an extension in Offerman's apartment, which she shared with Huff. Huff learned that Thomas and Offerman planned to meet, and he telephoned Thomas's probation officer and relayed the information. *Id.* at * 3. Based on this information, the officer went to look for Thomas, and initiated a stop when he saw Offerman enter Thomas's car. Upon smelling marijuana, the officer searched Thomas's vehicle and found four grams of marijuana under a floor mat. Thomas was charged with two parole violations. *Id.* at * 4.

Thomas moved to suppress the evidence, arguing that R.C. 2933.63 required its suppression because Huff had illegally intercepted the communications between Thomas and Offerman, and all the evidence was derived from the information supplied by Huff. The trial court denied Thomas's suppression motion, and the Fourth Appellate District upheld the denial. The court of appeals explained that the Fourth Amendment was not applicable, and then turned to the question of the right to privacy:

"Whenever there is a violation of the wiretap law, a person who unknowingly had his conversation intercepted suffers from an invasion of privacy. The invasion of privacy is not a one time occurrence. Every time the contents of the illegally intercepted conversation are disclosed, the person will suffer a further invasion of privacy. Therefore, the federal wiretap law, and, we assume, the Ohio

statute, prohibits further disclosure of the contents regardless of whether the illegal interception was made by a state official or private individual.

"In the case at bar, however, there was no further invasion of privacy by the courts failure to suppress. What appellant sought to suppress was not the contents of the conversation between himself and Offerman, but instead the marijuana which the parole officer found in appellant's car. Once the parole officer spotted Offerman getting into appellant's car, the contents of the illegally intercepted conversation became irrelevant except as to how the officer initially became aware of the meeting. Because there was no further invasion of privacy by admitting the marijuana into evidence, that purpose of the wiretap law would be satisfied.

"We are still faced with what appears to be all encompassing language in the statute. There are no explicit exceptions within the provisions of the statute. However, several limited exceptions have been formulated. See *United States v. Winter* ([C.A.1], 1981), 663 F.2d 1120 (contents may be disclosed for purpose of impeachment); *United States v. Libby* [*Liddy*] (1973), 354 F.Supp. 217 (contents may be disclosed in prosecution of person who made the illegal interception). We, therefore, believe that where both purposes of the wiretap law have been satisfied—i.e. implementation of the constitutional exclusionary rule and protection of the right to privacy—evidence discovered as fruits of an illegal wiretap need not be suppressed." *Id.* at * 13–14.

We adopt the Fourth District's reasoning. We note that the present case is distinguishable from *Thomas* because Davies was not a party to the conversation and his right to privacy was not violated. It was the privacy rights of Dina and Patty Houck that were affected. We find, however, that the trial court's refusal to suppress the evidence derived from the investigations, which were derived from the contents of the interception, was no further invasion of their privacy.

After a thorough review of the record, this court finds that Davies failed to prove that the evidence should have been suppressed. His sole assignment of error is overruled.

III

The judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

BATCHELDER, P.J., and BAIRD, J., concur.