The STATE of Ohio

v.

BELL.

Court of Common Pleas of Ohio,
Clermont County.

No. 2006 CR 00867.

Decided May 15, 2007.

74

Donald White, Clermont County Prosecuting Attorney, and David H. Hoffmann, and Jason E. Nagel, Assistant Prosecuting Attorneys, for plaintiff.

John Paul Rion, for defendant.

RINGLAND, Judge.

{¶ 1} Defendant, Jaysen Bell, challenges the validity of a search warrant yielding evidence that the State of Ohio plans to introduce against him at trial. Specifically, defendant takes umbrage with the issuance of the search warrant, claiming alternatively that (1) the accompanying affidavit contained false and misleading information requiring its invalidation under *Franks v. Delaware* (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667, and (2) the warrant, which permitted a contents search of defendant's computer hard drive, improperly issued from a Clermont County municipal court judge.

{¶ 2} Defendant initially filed his motion to suppress on December 12, 2006, later filing a supplemental motion with the court on January 10, 2007. At the conclusion of a suppression hearing held April 24, 2007, the court took the matter under advisement. Defendant filed his post-hearing brief supporting his motion on May 2, 2007, with the state's memorandum opposing suppression following on May 4, 2007. Having considered the arguments, evidence, and briefs submitted by the parties, the court decides defendant's motion as follows.

### FACTUAL BACKGROUND

{¶ 3} Defendant stands accused of one count of rape, three counts each of sexual battery and sexual imposition, and one count of gross sexual imposition stemming from alleged improper sexual conduct involving two foster children, T.T. and T.W., between July 2003 and June 2006.[1] He challenges the children's allegations as set forth in an August 9, 2006 affidavit supporting a search warrant obtained from the Clermont County Municipal Court. This warrant authorized the search of defendant's home and the seizure of certain evidence, including his computer and its contents.

{¶ 4} The state contends that in June of 2006, T.T. informed police that defendant had entered his bedroom on multiple occasions and masturbated him during his foster placement at defendant's residence. T.T. also stated that defendant once performed fellatio on him in an Amelia church parking lot. T.T. informed police that the only person he had told about the activity was T.W., another foster child who was living with defendant at the time T.T. spoke with police. In August 2006, the state claims that police spoke with T.W., who had been removed from defendant's care after T.T.'s revelation. T.W. provided a written statement asserting that defendant orally and digitally raped him during his residency at defendant's home and engaged in other inappropriate sexual behavior towards him. T.W. alleged that defendant remained in telephone and e-mail contact after his removal from defendant's home and that defendant had attempted to photograph him without clothing.

{¶ 5} Defendant claims the affidavit supporting the warrant recklessly omitted several key facts known to officers at the time of the warrant application. He asserts that the missing facts—once properly included—erode the credibility of the children's stories so as to destroy the probable cause underlying the warrant. During the suppression hearing, defendant admitted five exhibits into evidence in support of this argument. He first points to a discrepancy between facts contained in the affidavit and the police incident report from the interview conducted with T.T. While the affidavit avers that T.T. disclosed defendant's actions only to T.W., the police incident report states that he had also discussed the alleged incidents with his brother. Defendant also introduced a social worker report predating the warrant affidavit. In this report, T.T. claimed to have informed his brother, brother-in-law, foster sister, and the police about the alleged abuse. T.T. also stated in this report that while T.W. had told him of alleged abuse at the hands of defendant, he had never shared his own experiences with T.W.

---

1. In the interest of protecting the privacy of the alleged minor victims, the court will refer to them by their initials only.

{¶ 6} Defendant also highlights differences between the affidavit and the contents of T.W.'s written statement and police interview. During his statement and interview, T.W. claimed that he was unaware of any abuse suffered by T.T. Finally, defendant points to a Butler County Children Services incident report form detailing earlier allegations by T.T. of sexual abuse by his brother. Defendant claims not only that these allegations were later proven false, but also that T.T. allegedly confided in the same brother regarding abuse by defendant.

{¶ 7} Defendant believes these discrepancies are material to the veracity of the alleged victims and therefore should have been included within the warrant application. He submits that the police recklessly omitted facts regarding these several versions of the victim's stories and T.T.'s prior false allegations of sexual abuse because they raised significant doubts as to their credibility. In response, the state asserts that defendant failed to show that the officer obtaining the warrant omitted these facts with the intention of misleading the issuing judge. The state also claims that the facts omitted were immaterial to the alleged abuse because they did not contradict the essential facts of the children's allegations against defendant.

{¶ 8} Additionally, because defendant allegedly continued to contact T.W. by computer after his removal from defendant's residence, the warrant called for the search and seizure of such items as defendant's computer and its contents, including computer-related storage media. Defendant asserts that because the warrant authorized the interception of stored electronic data, the state was required to obtain the signature of a common pleas judge. While the parties agree that the warrant issued from a municipal court judge, the state disputes the applicability of R.C. 2933.51 et seq., which deals with "interception warrants," to the computer-based evidence seized by police.

## LEGAL STANDARD

{¶ 9} An affidavit supporting a warrant enjoys a presumption of validity. *State v. Jones* (2000), 90 Ohio St.3d 403, 739 N.E.2d 300, citing *State v. Roberts* (1980), 62 Ohio St.2d 170, 178, 16 O.O.3d 201, 405 N.E.2d 247. Accordingly, the burden of initially establishing whether a search was authorized by a warrant is on the party challenging the legality of the search. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889. The issuing judge's probable-cause determination is entitled to great deference: doubtful or marginal cases should be resolved in favor of the warrant. *Illinois v. Gates* (1983), 462 U.S. 213, 237, 103 S.Ct. 2317, 76 L.Ed.2d 527, fn. 10. *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph two of the syllabus.

78

■ {¶ 10} "To successfully attack the veracity of a facially sufficient search-warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either 'intentionally, or with reckless disregard for the truth.'" *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, at ¶ 31, quoting *Franks v. Delaware* (1978), 438 U.S. 154, 155–156, 98 S.Ct. 2674, 57 L.Ed.2d 667. "Reckless disregard" means that the affiant had serious doubts about the truth of an allegation. Id., citing *United States v. Williams* (C.A.7 1984), 737 F.2d 594, 602. Omissions count as false statements if "designed to mislead or * * * made in reckless disregard of whether they would mislead the [issuing judge]." (Emphasis deleted.) Id., citing *United States v. Colkley* (C.A.4, 1990), 899 F.2d 297, 301.

■ {¶ 11} In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the task of the issuing judge is simply to make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gates,* 462 U.S. at 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527; *George,* 45 Ohio St.3d at 329, 544 N.E.2d 640. When reviewing the issuing judge's decision to issue a search warrant, a trial court should not substitute its own judgment by conducting a de novo determination as to whether the affidavit submitted in support of the search warrant establishes probable cause. See id. at 330, 544 N.E.2d 640. Rather, its duty is simply to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. Id. at 329, 544 N.E.2d 640.

## LEGAL ANALYSIS

{¶ 12} If the state utilized an improper procedure in obtaining the warrant, it must be invalidated and the challenged evidence suppressed. In such an instance, the court need not even reach the contents of the warrant affidavit itself to examine whether any intentional or reckless material omissions were made. Accordingly, the court elects to address defendant's arguments in the reverse order presented during the parties' briefing and argument of the motion.

### A. Issuance Of The Warrant From A Municipal Court Judge

{¶ 13} Defendant challenges the search and seizure of his home computer system on the grounds that the warrant authorizing the police action improperly issued from a municipal court judge. He directs the court's attention to R.C. 2933.51 et seq., which govern warrants permitting police to intercept electronic communications. Defendant claims that an interception warrant was necessary

for the search of his computer system, and that the improper issuance of the interception warrant requires suppression of any evidence seized.

## 1. Defining the Scope of the Interception Warrant

{¶ 14} An "interception warrant" is defined as "a court order that authorizes the interception of * * * electronic communications and that is issued pursuant to sections 2933.53 to 2933.56 of the Revised Code." R.C. 2933.51(F). The court notes the clear statutory directive that authorization for such warrants must be granted by a common pleas judge, despite a lack of legislative explanation as to why the signature of such a judge is necessary.[2] "Each application for an interception warrant *shall be made* in writing upon oath or affirmation to a judge of the *court of common pleas.*" (Emphasis added.) See R.C. 2933.53(B). What is less clear in the present case, however, is whether police were required to obtain an interception warrant for defendant's computer system before searching and seizing the information contained inside.

{¶ 15} To make this determination, the court must first examine whether the search and seizure of defendant's computer constituted an "interception." The term "intercept" is defined as "the * * * acquisition of the contents of any * * * electronic communication through the use of an interception device." R.C. 2933.51(C). An "interception device" is thereafter defined as "an electronic, mechanical, or other device or apparatus that can be used to intercept a[n] * * * electronic communication." R.C. 2933.51(D). The statutes define an "electronic communication" as "a transfer of a sign, signal, writing, image, sound, datum, or intelligence of any nature that is transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system." An "electronic communications system" includes "a computer facility or related electronic equipment for the electronic storage of electronic communications." R.C. 2933.51(P). Finally, and importantly, "electronic storage" is defined as "a temporary, intermediate storage of a[n] * * * electronic communication that is incidental to the electronic transmission of the communication." R.C. 2933.51(S).

---

2. Despite diligent effort, the court can uncover no legislative history satisfactorily explaining (1) why an interception warrant initially required the signature of an appellate judge or (2) why it currently requires the signature of a common pleas judge. The General Assembly enacted the original statutes in 1987 without comment as to their purpose or scope. See 141 Ohio Laws, Part I, 457, 458–474. The signature requirement was changed in 1996 without substantive comment. 146 Ohio Laws, Part II, 2672, 2680. While a historical review of similar federal legislation sheds no more light on the origin of this requirement, statutory references to a "court of competent jurisdiction" indicates that Congress presumably intended that a single court oversee the interception warrant process in light of special privacy concerns arising during ongoing monitoring or recordings. The basis for these concerns in such instances presents a key distinction from the present case, as discussed infra.

{¶ 16} The court views the General Assembly's definitions as both unwieldy and circular, but concludes from them that an "interception" is the electronic or mechanical acquisition of writing or images initially transferred by electronic means and thereafter temporarily stored on electronic equipment. It necessarily follows that if the state plans to acquire electronic writing or images temporarily stored on an individual's computer by using electronic or mechanical means of extraction, the law requires a properly issued interception warrant.

{¶ 17} In the present case, the warrant sought acquisition of all internal and external computer storage devices thought to contain e-mail and other electronic messages and images previously transmitted between defendant and T.W., in addition to all of defendant's computer-related accessories. In addition, the Hamilton County Sheriff's Office Regional Electronics Computer Investigations Section ("RECI") extracted or copied much of this information from defendant's computer using electronic or mechanical means.

### 2. The Meaning of "Temporarily Stored" Electronic Communications

{¶ 18} The court must also consider the import of the phrase "temporary, intermediate storage * * * incidental to the electronic transmission of the communication." See R.C. 2933.51(S). While Ohio courts have apparently been without occasion to expressly address the "temporary storage" of electronic communications incidental to their transmission, the state points out that the statutory definitions of the terms "intercept" and "electronic storage" mirror their federal counterparts. Compare R.C. 2933.51(C) and 2933.51(S) with Sections 2510(4) and 2510(17)(A), Title 18, U.S.Code. The state alleges that federal law defines an "interception" as the government's acquisition of data contemporaneous to its transmission. See *Fraser v. Nationwide Mut. Ins. Co.* (C.A.3, 2003), 352 F.3d 107, 113; see, also, *United States v. Steiger* (C.A.11, 2003), 318 F.3d 1039, 1048–49; *Konop v. Hawaiian Airlines, Inc.* (C.A.9, 2002), 302 F.3d 868; *Steve Jackson Games, Inc. v. United States Secret Serv.* (C.A.5, 1994), 36 F.3d 457; *Wesley College v. Pitts* (D.Del.1997), 974 F.Supp. 375; *United States v. Turk* (C.A.5, 1976), 526 F.2d 654. Since the information targeted by the warrant was not then being transmitted by defendant to a third party, the state believes that the interception-warrant statutes are inapplicable.

{¶ 19} For the several reasons that follow, the court agrees with the state's argument that the reference made in R.C. 2933.51(S) to a "temporary, intermediate storage * * * incidental to the electronic transmission of the communication" is properly characterized as referring to a "real time" acquisition of electronic information upon transfer (i.e., wiretapping or electronic eavesdropping) as opposed to an after-the-fact seizure of stored information contained inside a computer. Even with a minority of federal courts rejecting a "rigid

storage-transit dichotomy," the period of time for which defendant apparently retained the seized prior communications in his computer demonstrates to this court's satisfaction that it was indeed stored. Cf. *In re Pharmatrak, Inc.* (C.A.1, 2003), 329 F.3d 9, 21; *Potter v. Havlicek* (Feb. 14, 2007), S.D.Ohio No. 3:06–CV–211, 2007 WL 539534.

i. The language of R.C. 2933.51 et seq. supports application of the statutes only to ongoing seizures of "real time" communications

{¶ 20} First, reviewed broadly, R.C. 2933.53 to 2933.56 (those portions of the Revised Code addressing interception warrants) evince an intended application to electronic communications obtained by law enforcement as they are transmitted from a suspect to a third party, or from a third party to a suspect. For example, R.C. 2933.53 makes multiple references to the "installation" of an interception device, ostensibly to trap communications that then follow.

{¶ 21} Additionally, R.C. 2933.53(B)(6) requires that law enforcement include within its application "a statement of the period of time for which the interception is required to be maintained," clearly contemplating an ongoing acquisition of information by law enforcement as it is transmitted. In the event that the interception is not terminated automatically upon a first receipt of the described communication, R.C. 2933.53(B)(6) requires the state to make a showing of probable cause for its belief that *additional communications* may occur thereafter. Similarly, R.C. 2933.56(A)(11) requires the state to "provide oral or written progress reports at seven-day intervals to the judge who issued the warrant showing the progress made toward achievement of the authorized objective of the warrant and the *need for continued interception.*" (Emphasis added.) Finally, R.C. 2933.55 deals with time extensions for existing interception warrants.

{¶ 22} While the court can readily understand the application of these several statutes to limit the duration of ongoing secret recordings or monitoring, it fails to see their relevance to the extraction or copying of stored communications that have already taken place. Unlike a wiretap or electronic eavesdrop on defendant's ongoing communications, the state's warrant sought to disconnect defendant's computer and copy or extract the contents only as they existed at the time seized. Under the circumstances as they existed, the state did not possess the capacity to obtain any subsequent transmissions to or from defendant.

{¶ 23} This fact aids the court's analysis when it is coupled with the critical distinction between the statutory definitions of "wire communication" and "electronic communication." While the definition of "wire communication" expressly includes the "electronic storage of a wire communication," the storage of an electronic communication after its transmission is not similarly included as part of a covered electronic communication. Compare R.C. 2933.51(A) and R.C.

2933.51(N). The General Assembly could have crafted a definition of "electronic communication" expressly including electronically stored e-mail communications of the type at issue here, but apparently chose not to do so. As a result, these stored communications are not part of "electronic communications" as defined and cannot be subject to "interception." See R.C. 2933.51(C).

{¶ 24} The court must therefore conclude that the retrieval of stored electronic communications may occur without an interception warrant. While R.C. 2933.51 et seq. do not explicitly limit coverage to contemporaneous seizures of electronic communications, the court believes that its decision has a firm basis in the logic and language of the interception warrant statutes.

ii. Ohio decisions have implicitly upheld the propriety of seizing computer-stored data with warrants issued from municipal courts

{¶ 25} Other Ohio courts have addressed municipal court warrants issuing for the search and seizure of computer-based data, albeit somewhat indirectly. In *State v. Cook*, 149 Ohio App.3d 422, 2002-Ohio-4812, 777 N.E.2d 882, the defendant's brother-in-law contacted police after discovering pornographic pictures of minors stored on the defendant's home computer. Id. at ¶ 5–6. The police prepared a warrant authorizing the search and seizure of the defendant's computer diskettes, central processing units with hard drives, keyboard, and monitor, thereafter obtaining the signature of a municipal court judge. Id. at ¶ 6. After seizure of the items, police forensics experts used a machine and EnCase software to make mirror images of the hard drive. Id. at ¶ 17–18. While the defendant in *Cook* did not claim that the municipal judge's signature rendered the warrant defective, neither the trial nor appellate courts invalidated it on that basis after expressly referring to its origin.[3]

{¶ 26} Similarly, in *Guest v. Leis* (C.A.6, 2001), 255 F.3d 325, a federal case applying Ohio law, RECI officers prepared a search warrant authorizing the search of an individual's computer hardware and software after learning that he operated an adult internet bulletin board containing obscene images. Id. at 330. Like the warrant in the present case, the warrant in *Guest* limited the items to be seized to those used in the alleged offense. See id. Furthermore, this warrant was also signed by a judge of the Clermont County Municipal Court. Id. Officers seized the computer system and took it to the station in reliance upon the warrant, where a contents search was later performed. Id. at 331. *Guest* took no issue with the warrant issued by the municipal court judge in finding the off-

---

**3.** See, also, *Breno v. Mentor*, Cuyahoga App. No. 81861, 2003-Ohio-4051, 2003 WL 21757504 (no judicial mention of impropriety where municipal judge apparently issued warrant allowing for the seizure and analysis of the plaintiff's home computer).

site search of the suspect's computer reasonable to allow police to locate the offending files. Id. at 335.

iii. Written Ohio opinions discussing the applicable statutes address only the "real time" interception of communications by authorities

{¶ 27} Ohio decisions addressing the interception warrant statutes unfailingly address situations involving the state's use of information surreptitiously obtained during a suspect's communication with a consenting third party or parties. By contrast, none refer to the application of R.C. 2933.51 et seq. to circumstances in which a defendant stores previous electronic communications later sought by the state. See, e.g., State v. Dickey, Darke App. No. 06–CA–1693, 2007-Ohio-1180, 2007 WL 778629 (information obtained by monitoring of telephone calls from jail); State v. Hennis, Clark App. No. 2003 CA 21, 2005-Ohio-51, 2005 WL 32796 (information obtained by audio recording of conversation between defendant and victim); State v. Stalnaker, Lake App. No. 2004–L–100, 2005-Ohio-7042, 2005 WL 3610430 (information obtained through controlled telephone calls); see, also, State v. Slone, Montgomery App. No. 18922, 2002-Ohio-4119, 2002 WL 1832915 (information obtained from face-to-face conversation with hidden monitoring device deemed not an "electronic communication"). These various circumstances are readily distinguishable from the present case. In the cases cited above, authorities sought to monitor or record communications between parties as they occurred. In the present case, the state did not attempt a similar monitoring or recording of ongoing electronic communications between defendant and T.W. Rather, it sought a defined class of information already contained inside defendant's computer system.

{¶ 28} The court believes that the former situations present substantially more cause for caution in the issuance of a search warrant than does the latter so as to necessitate the added requirements of R.C. 2933.51 et seq.[4] Left untempered, a "real time" interception may well result in the state's unlimited receipt of private information wholly unrelated to its investigation. The constitutional perils related to such interceptions are clear.

{¶ 29} However, under the present facts, such concerns are adequately protected by the limited scope of the warrant itself. Indeed, the court cannot logically divorce a narrowly tailored search of information contained in a computer's

---

4. This conclusion is buttressed in part by Congressional privacy concerns underlying the similar federal statutes. These concerns appear related only to ongoing interceptions: "[t]o safeguard the privacy of innocent persons, the interception * * * should remain under the control and supervision of the authorizing court." (Emphasis added.) Act of June 19, 1968, Public Law No. 90–351. The General Assembly failed to provide a similar statement of purpose, scope, or intent when adopting Ohio's laws in 1987 or when adding "electronic communications" in 1996.

existing storage from a similarly tailored search of any other closed container possibly containing stored evidence of criminal activity. In either instance, the limited nature of the warrant provides protection against the unauthorized seizure and use of information unrelated to the criminal investigation.[5] Accordingly, the court finds the procedure by which the state obtained the warrant acceptable.

## B. Omissions From The Search Warrant Affidavit

### 1. Omissions Regarding the Alleged Victims' Disclosure of Abuse by Defendant

{¶ 30} Defendant also contends that the affidavit supporting the warrant made multiple material omissions that, if included within the affidavit, would negate probable cause. During the suppression hearing, defendant presented evidence as to discrepancies between both the number and identity of those persons to which T.T. revealed alleged abuse by defendant. While the affidavit states that T.T. had only informed one person, the police incident report lists two persons. A social worker report of an interview with T.T. conducted after the police interview indicates that T.T. had disclosed the abuse to four persons, including the police officer. Defendant also presented evidence that the alleged victims never told each other about supposed abuse and that T.W. had earlier denied any occurrences of wrongdoing on the part of defendant. This information also conflicts with the statements contained in the affidavit.

{¶ 31} The court notes that the officer seeking the warrant indeed failed to reference these discrepancies within his warrant affidavit. However, "[e]ven if the affidavit contains false statements [or omissions] made intentionally or recklessly, a warrant based on the affidavit is still valid unless, with the affidavit's false material set to one side [or with the omissions included], the affidavit's remaining content is insufficient to establish probable cause." *State v. Sells*, Miami App. No. 2005–CA–8, 2006-Ohio-1859, 2006 WL 964573, at ¶ 11, citing *State v. Waddy* (1992), 63 Ohio St.3d 424, 441, 588 N.E.2d 819.[6]

{¶ 32} Defendant cites no cases supporting the proposition that an officer's failure to include inconsistent statements, without more, constitutes a *Franks* violation. However, the court observes that in *Sells*, the defendant also sought invalidation of a warrant in part because the police officer's accompanying

---

5. Defendant does not argue that the state's seizure of information exceeded the scope of the search warrant, but instead only claims that the warrant was improperly obtained.

6. Defendant requests that the court strike all statements in the warrant affidavit contradicted by the alleged material omissions. The court declines this invitation in light of the instruction that it *add* alleged material omissions to the warrant. Id.

affidavit omitted facts regarding an informant's inconsistent versions of events. *Sells*, 2006-Ohio-1859, 2006 WL 964573, at ¶ 13. *Sells* held that the informant's initial denial of his own role in the crime was without consequence, as he later confessed to his role and provided consistent statements regarding the defendant's participation. Id. In the present case, the officer testified that while T.W. initially denied any knowledge of defendant's alleged abuse, he later opened up and provided information of abuse similar to that given by T.T. For purposes of their veracity in light of questions they would rather not answer, the court sees little difference between a reticent co-conspirator and a reticent victim of alleged sexual abuse.

{¶ 33} Even assuming for the sake of argument that the officer intentionally or recklessly omitted these facts, adding them to the affidavit changes little. Neither the number of persons the alleged victims told of the abuse nor their sharing of stories contradicts the affidavit's allegations regarding the occurrence of criminal activity and the related evidence likely found at defendant's residence. Instead, such discrepancies only raise possible doubt regarding events taking place *after* the alleged abuse. The same analysis holds true for apparent conflicting statements regarding the frequency of improper sexual contact and the type of contact alleged.[7] The omission of these statements from the affidavit is therefore immaterial, as they fail to negate the assertions of T.T. and T.W. regarding the occurrence of abuse on multiple occasions.

### 2. Omissions Regarding T.T.'s Prior False Allegations of Sexual Abuse

{¶ 34} Defendant nonetheless claims that when these discrepancies are combined with the further omission of previous false allegations of sexual abuse by T.T. against his brother, the issuing judge's finding of probable cause cannot be upheld. Certainly, omitted facts bearing adversely on the credibility of an informant tend to mislead a judge considering a request for a search warrant. See *State v. Stropkaj* (Nov. 16, 2001), Montgomery App. No. 18712, 2001 WL 1468905.

{¶ 35} "[A]n affiant cannot be faulted for failing to include in an affidavit facts that are unknown to him at the time." *Sells*, 2006-Ohio-1859, 2006 WL 964573, at ¶ 13, citing *Stropkaj*, 2001 WL 1468905, at *3. However, in the present case, the officer admitted his awareness of T.T.'s prior unfounded

---

7. The warrant affidavit states that T.T. told the officer that the abuse "happened on more than one occasion." Defendant claims that, on another occasion, T.T. stated that the abuse occurred "nearly every night." In addition, defendant alleges that T.T. provided differing accounts of the type of sexual contact taking place in the church parking lot to the police and a social worker. Neither of these apparent discrepancies rebuts the statement's material assertions that sexually inappropriate contact occurred on at least one occasion and that such contact, regardless of its type, occurred in the church parking lot.

allegations of abuse during the hearing while also stating that he included only information necessary to aid in the finding of probable cause for a warrant. In light of the officer's admitted knowledge and statement, the court must conclude that he intentionally or recklessly omitted the statement because it did not assist a finding of probable cause. The existence of T.T.'s prior false allegation of abuse is material to his credibility. Therefore, the court finds it properly considered by the judge approving the warrant. Because defendant would be permitted to present evidence of T.T.'s prior false allegations at trial for the purpose of attacking the credibility of his accusations, their omission had a distinct tendency to mislead the judge who issued the warrant.

{¶ 36} Having made this finding, the court must add the omitted facts to the affidavit and determine whether it could nonetheless provide an independent basis for probable cause. *Sells,* 2006-Ohio-1859, 2006 WL 964573, at ¶ 11, citing *Waddy,* 63 Ohio St.3d at 441, 588 N.E.2d 819. Mindful of the Supreme Court's directive that resolution of even "doubtful or marginal cases * * * should be largely determined by the preference to be accorded to warrants," the court concludes that probable cause for the warrant could exist even with the inclusion of the omitted statements. See *United States v. Ventresca* (1965), 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684; *Illinois v. Gates* (1983), 462 U.S. 213, 237, 103 S.Ct. 2317, 76 L.Ed.2d 527, fn. 10; *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph two of the syllabus.

{¶ 37} A finding of probable cause requires only the existence of circumstances that warrant suspicion. The standard for probable cause therefore requires only a showing that the probability of criminal activity exists—it does not require a prima facie showing of criminal activity. *George,* 45 Ohio St.3d at 329, 544 N.E.2d 640. Even accounting for T.T.'s previous false accusations and the other discrepancies, the issuing judge could have reasonably found that the remaining level of detail supporting the allegations and the children's similar stories indicated a probability that criminal activity had occurred. Furthermore, the fact that T.T. may have made prior false allegations of sexual abuse does not necessarily require the judge to cast a jaundiced eye upon the similar allegations of T.W. set forth in the same affidavit.[8]

{¶ 38} This court's own opinion as to whether it would approve a warrant on these facts is irrelevant, as it is flatly barred from substituting its own judgment for that of the issuing court. Id. at 330, 544 N.E.2d 640. Instead, its determination is limited to simply ensuring that the issuing judge had a substantial basis

---

8. In fact, under the reading of the warrant encouraged by defendant in light of Defense Exhibits 3, 5, and 6, T.W. would apparently have been unaware of any abuse allegedly suffered by T.T.

for concluding that probable cause existed. Id. Under this standard, the court must conclude that such a basis existed despite the omission of a material fact and other factual discrepancies from the warrant affidavit.

## CONCLUSION

{¶ 39} In light of the above analysis, the court finds that (1) the warrant permissibly issued from the Clermont County Municipal Court in light of the type of evidence sought by the state and that (2) material and other information omitted from the warrant affidavit did not destroy the issuing judge's ability to find probable cause for the warrant to issue. Defendant's motion to suppress is therefore **DENIED**.

So ordered.