**UNITED STATES of America, Plaintiff,**

v.

**Jose Mendoza BARRAGAN, Defendant.**

**No. 1:07–CR–66–08–SEB–KPF.**

United States District Court, S.D. Indiana, Indianapolis Division.

Dec. 11, 2008.

Melanie C. Conour, United States Attorney's Office, Indianapolis, IN, for Plaintiff.

Robert J. Hill, Gilroy, Kammen & Hill, Indianapolis, IN, for Defendant.

## ORDER DENYING MOTION TO SUPPRESS

SARAH EVANS BARKER, District Judge.

This matter is before the Court on the Motion to Suppress [Docket No. 287] filed by Defendant, Jose Mendoza Barragan, on August 12, 2008. In his motion, Barragan seeks to suppress evidence that the government obtained through wiretap surveillance, on the ground that it was obtained in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. For the reasons detailed below, Defendant's Motion is *DENIED.*

### Analysis

### I. Factual Background

The current motion to suppress challenges the order that authorized wire surveillance of Barragan and his co-defendants.[1] Pursuant to an investigation

---

1. A sealed indictment was returned against Barragan in this cause on June 19, 2007. On January 16, 2008, the grand jury returned a superseding indictment, which set forth nine counts against Barragan. The counts charged in the superseding indictment include: conspiracy to posses with intent to distribute five kilograms or more of cocaine; possession with intent to distribute five kilograms or more of cocaine; distribution of five kilograms or more of cocaine; and attempted possession with intent to distribute five kilograms or more of cocaine. This case is currently set for trial on February 2, 2009.

conducted by Los Angeles based DEA Agents, on April 12, 2007, the government applied for and obtained authorization from a Los Angeles County Superior Court to intercept wire communications over four cellular telephones, including a phone used by Barragan (then known to law enforcement only as "PACO"). Along with this application, DEA Special Agent Hans Charters submitted a seventy-four-page affidavit describing in detail the investigation undertaken prior to the application for a wiretap order. That affidavit's substance lies at the center of the present dispute.

According to Agent Charters's affidavit, police and agents conducted extensive physical surveillance in the course of their investigation. This included, but was not limited to, following the suspects (including Barragan) and observing them engaged in various activities. Aff. ¶¶ 45–49. In describing this surveillance, Agent Charters noted that at various times the investigation had to be stalled, interrupted, or stopped altogether. Because of the limitations inherent in physical observation generally, and more importantly, because the great majority of the suspects' activities occurred indoors and thus out of view of law enforcement, physical surveillance of the suspects in this case became fruitless.[2] *Id.* According to the affidavit, physical surveillance was also of limited use because most of the activity in this case occurred in a residential area, which made it likely that the suspects would detect the presence of law enforcement agents. Aff. ¶ 51.

During the course of the investigation, agents also identified the addresses of targeted individuals and searched the trash left outside those locations. Aff. ¶¶ 68–69.

According to the affidavit, the agents had difficulty connecting particular trash cans with specific individuals, and often failed to locate any trash cans at all, so this method was also generally unsuccessful. Attempting to search Barragan's trash posed special difficulties because agents had been able to identify him with a commercial address, and the only trash can at that location was a communal one that may or may not have been used by Barragan. ¶ 74. The affidavit indicated that additional trash searches were planned, but Agent Charters did not view those searches as promising in terms of their producing useful information.

The investigation conducted prior to the wiretap authorization application also included telephone toll record analysis. According to the affidavit, "Telephone toll records have been used and are continuing to be used in this investigation and will be important to help identify new telephones being used by" the suspects. Aff. ¶ 62. Agent Charters noted, however, that the information made available—phone numbers only—was too limited to meaningfully advance the investigation. *Id.*

Agent Charters also provided detailed reports of repeated attempts to utilize undercover agents and confidential informants. These attempts failed, and according to the affidavit, further attempts to use informants or agents would confront significant difficulties because of the volatile and secretive nature of the narcotics organization being investigated. Aff. ¶¶ 41–44. Specifically, the government used one informant to gather intelligence from sellers of narcotics, but as of the date of the affidavit, that informant, who had been involved in a shooting, had died. Aff. pg.

---

2. When discussing the limitations of the physical surveillance, Agent Charters added his belief that only wire surveillance would adequately equip law enforcement to carry out an effective investigation. Aff. ¶¶ 50–56. This

belief extended, according to Agent Charters's affidavit, to obtaining a traditional search warrant, which he believed would also prove insufficient to continue an adequate investigation. Aff. ¶¶ 58–59.

70. A second informant was in contact early on with a suspected trafficker associated with this narcotics organization, but, by the date the affidavit was executed, the informant had been excluded completely from the group and had little chance of reconnecting with them. The affidavit also detailed attempts by an undercover officer to infiltrate the narcotics organization, which attempts were entirely unsuccessful because he was never included in any organization activity. Aff. pg. 72.

After laying out the details of these failed investigative steps, Agent Charters discussed the limitations he perceived in using various alternative investigative techniques other than wiretap surveillance. For example, according to the affidavit, pen registers were thought to be inadequate for the investigation because of the limited information they offered and because the information they would produce was of marginal value, at best, to the investigation underway. Aff. ¶ 62–65. The Charters affidavit similarly discussed the limitations inherent in "mail cover" investigations and closed circuit television monitoring.[3] Agent Charters averred that all of these alternatives would fail to produce significant investigative results and would instead be a waste of investigative resources. *Id.*

Based on the methods utilized as well as those not pursued by law enforcement prior to the application for a wire surveillance order, Agent Charters concluded that wiretap surveillance was essential to the success of the investigation, stating that it was "the only reasonable and effective way to develop the necessary evidence to discover and prosecute the target subjects involved in this conspiracy." Aff. ¶¶ 85–86. In response to these averments in the Charters affidavit, the Los Angeles Superior Court authorized the wiretap surveillance requested by the government. Arguing here in a motion to suppress that the basis for the California court order was faulty, Barragan seeks to have any and all evidence produced by the wire surveillance that is otherwise relevant to his case excluded from trial.

## II. Legal Analysis

■ We begin by determining what body of legal precedent governs our analysis and resolution of the substantive suppression issue. Barragan argues that California and Ninth Circuit precedents control our decision making because the order authorizing the wiretap was issued by a California court and the permitted surveillance occurred in California. Caselaw discussing this issue at the appellate level is scant, although, as Barragan points out, numerous district courts have held that "the governing law should be that of the place where the electronic surveillance occurred." *United States v. Restrepo,* 890 F.Supp. 180, 191 (E.D.N.Y. 1995); *see also United States v. Ozuna,* 129 F.Supp.2d 1345 (S.D.Fla.2001); *United States v. Longo,* 70 F.Supp.2d 225 (W.D.N.Y.1999); *United States v. Gerena,* 667 F.Supp. 911, 926 (D.Conn.1987). None of these holdings is controlling here, obviously, but they are helpful in that they suggest a trend toward applying the law of the forum where the warrant was authorized, a trend we shall follow here. Thus, we shall examine the suppression issue according to California law, and by extension to Ninth Circuit precedent.[4]

---

3. Closed circuit television monitoring refers to the use of stationary "pole" cameras to monitor a specific location. Mail covering is a method in which the postal service creates a list of all senders and receivers of mail associated with a target location.

4. The order was authorized under state law, but federal law is the primary source of the state rule in this case because California courts have held that California wiretap law is fundamentally informed by federal law. *People v. Leon,* 40 Cal.4th 376, 53 Cal.Rptr.3d

We shall also notice the relevant Seventh Circuit precedents to the extent that they clarify similar rulings under Ninth Circuit law.

■ The substantive issue presented here is whether the wiretap was properly authorized under 18 U.S.C. § 2518(1)(c). If the wiretap was improperly authorized, the ensuing surveillance constituted an unreasonable search and a violation of Barragan's Fourth Amendment rights, which would warrant the suppression of any and all evidence gathered in the course of the wire surveillance. Because of the privacy intrusion inherent in wire surveillance, the government must establish the "necessity" of such a measure. *United States v. Rivera,* 527 F.3d 891 (9th Cir.2008); *United States v. Ceballos,* 302 F.3d 679, 683 (7th Cir.2002). To that end, an application for wiretap surveillance must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). "Necessity" therefore refers to the demonstrated need for a wiretap arising from the insufficiency of traditional investigative methods.

The central factual issue in this case thus becomes whether the affidavit of Agent Charters, upon which the California judge relied in authorizing the wiretap, sufficiently established "necessity." Barragan argues that the affidavit failed to show the insufficiency of traditional investigative methods, relying on two recent cases in support of his argument. In *United States v. Gonzalez, Inc.,* 412 F.3d

1102 (9th Cir.2005), the court stated that an affidavit supporting a wiretap application must include particularized reasons distinct from other narcotics cases to justify this added investigative tool. Furthermore, the court in *United States v. Blackmon,* 273 F.3d 1204 (9th Cir.2001), held that an affidavit containing nothing more than a discussion of the limitations of traditional investigative methods is insufficient to show necessity because it fails to establish that some other techniques were attempted and proved inadequate. Barragan asserts that, because the affidavit submitted by Agent Charters discusses certain investigative methods only with regard to their limitations but demonstrates no actual application of those methods, the affidavit is insufficient in establishing "necessity" under the standards of *Gonzalez, Inc.* and *Blackmon.*

Similarly, the Seventh Circuit has emphasized that "necessity" is to be assessed with reference to the supporting affidavit's showing that traditional investigative methods have proved inadequate. *See United States v. Ceballos,* 302 F.3d 679 (7th Cir.2002); 18 U.S.C. § 2518(1)(c). As with the Ninth Circuit, the Seventh Circuit approves of wiretapping orders based on affidavits only if they include the actual investigative measures taken by the police as well as the limitations of traditional investigation. *See United States v. Campos,* 541 F.3d 735 (7th Cir.2008). Thus, Barragan has correctly highlighted an important part of the necessity requirement under both Ninth and Seventh Circuit law.

However, Barragan's argument neglects another crucial aspect of the law found in

524, 529, 150 P.3d 207 (2007). Moreover, it is well established that the adequacy of applications for state wiretap orders is assessed under state and federal law when the evidence is submitted in federal court. *See United States v. Vazquez,* 605 F.2d 1269 (2d Cir. 1979); *Bunnell v. Motion Picture Ass'n of*

*America,* 567 F.Supp.2d 1148 (C.D.Cal.2007) (noting federal preemption of the state law). It is worthwhile to note that California Penal Code Section 629.52, which the authorizing judge applied, mirrors the federal statute in all relevant respects.

both circuits. In the Seventh Circuit, *Ceballos* as well as a variety of other decisions referenced the disjunctive language of 18 U.S.C. § 2518(1)(c). That statute clearly provides that the government may establish the need for wire surveillance by demonstrating any one of the following: "[1] whether or not other investigative procedures have been tried and failed *or* [2] why they reasonably appear to be unlikely to succeed if tried *or* [3] [why they appear to be] too dangerous." 18 U.S.C. § 2518(1)(c) (emphasis added); *Ceballos*, 302 F.3d at 683; *United States v. Adams*, 125 F.3d 586, 595 (7th Cir.1997). The Government, in its response, emphasizes this point, arguing that Agent Charters's affidavit was sufficient in that it contained averments that some investigative techniques had failed and that others would have failed had they been attempted.

■ Barragan apparently contends that interpreting the statute in the disjunctive is contrary to the holdings in *Gonzalez, Inc./Blackmon*, which require that an affidavit do more than discuss the limitations of traditional investigative techniques. After carefully reviewing Ninth Circuit opinions, however, we conclude that Barragan's distinctions relative to this affidavit are inaccurate. Although the Ninth Circuit's opinions may not reflect the statutory point as straightforwardly as do the Seventh Circuit's, the Ninth Circuit has also clearly embraced the disjunctive interpretation of 18 U.S.C. § 2518(1)(c). First, by way of clarification, the *Gonzalez, Inc./Blackmon* rule is simply that generic affidavit language providing a discussion of why wiretapping is superior to traditional investigative methods is insufficient to demonstrate the necessity of wiretap surveillance. *See Blackmon*, 273 F.3d at 1211. Moreover, contrary to Barragan's

position, Ninth Circuit law interpreting the statute "does not require that the government 'exhaust every conceivable alternative before obtaining a wiretap.'" *United States v. Homick*, 964 F.2d 899, 903 (9th Cir.1992) (quoting *United States v. Spagnuolo*, 549 F.2d 705, 710 (9th Cir.1977)). In fact, the Ninth Circuit has recognized that law enforcement may "reasonably reject" traditional techniques when they are deemed unlikely to succeed. *U.S. v. Feldman*, 535 F.2d 1175 (9th Cir.1976). The Ninth Circuit, recognizing the clear language of the statute, has held that a wiretap application affidavit may demonstrate necessity by showing details about failed investigative methods or details about why other methods, although not attempted, would fail. *United States v. Kalustian*, 529 F.2d 585 (9th Cir.1975); *see also United States v. Petti*, 973 F.2d 1441, 1445 (9th Cir.1992). Barragan has cited none of this clarifying authority in his motion, all of which demonstrates that the rule he draws out of *Gonzalez, Inc.* and *Blackmon* is not sufficiently precise. In both the Ninth Circuit and the Seventh, an affidavit is deemed sufficient if it establishes necessity through a detailed listing of failed investigative methods or methods that would fail if attempted, or some combination of the two.[5]

■ The affidavit in the case at bar embodied a combination of the two. In terms of discussing "other investigative procedures have been tried and failed," Agent Charters's affidavit chronicled physical surveillance, trash searches, and telephone toll record analysis, and included a lengthy discussion of the reasons those procedures failed and would continue to fail due to hindrances arising from and related to this particular investigation. He

---

**5.** Or, though not relevant to this case, that certain methods would be too dangerous to attempt.

also described attempts to use confidential informants and undercover agents, explaining why those attempts failed and why further use of those methods would be similarly unsuccessful. Under Ninth Circuit law, when an affidavit explains why particular informants have failed in their efforts and are unlikely to succeed in further attempts, that can be deemed sufficient to show necessity. *See U.S. v. Rivera*, 527 F.3d 891, 899 (9th Cir.2008). Agent Charters's affidavit did just that, and it included explanations of numerous other failed methods based on the specific facts confronting the agents here. Accordingly, his affidavit satisfies the standards of *Gonzalez, Inc.* and *Blackmon*, as well as the general standards set out in other Ninth Circuit cases.

Agent Charters's affidavit also referenced other traditional investigative methods and elaborated as to "why they reasonably appear[ed] to be unlikely to succeed if tried." Included in this category of investigative steps were pen registers, which, according to Charters, would not have provided useful information here, and closed circuit television monitoring, about which he opined that it would produce no more than very limited information about the suspects in this case because most of their allegedly illegal activities were being conducted inside their residences. With regard to mail covering, his view was similar to television monitoring, namely, that it would yield nothing more than corroborative identification information and thus would not advance the investigation. In sum, all of these methods would assist to identify suspects but would not connect them with any particular activities, thus bringing the investigation to a standstill. In so describing these investigative options, the affidavit sufficiently and reasonably detailed the reasons each of them would prove futile.

Agent Charters's affidavit sufficiently established the "necessity" of wiretap surveillance, as required by 18 U.S.C. § 2518(1)(c). Affidavits in support of wiretap authorization applications are subject to heightened standards of judicial scrutiny because of the extent to which they implicate privacy concerns. The Affidavit of Agent Charters satisfied these standards under both Ninth and Seventh Circuit law and in accordance with the plain reading of the statute. It fully and completely addressed the need for wire surveillance given the inadequacy, if not futility, of alternative, less invasive investigative methods.

### III. Conclusion

Having considered Defendant Barragan's challenge to the sufficiency of the Charters Affidavit submitted to the California court in support of the government's application for wire surveillance, we find that in all respects the affidavit comports with the statutory standards and Ninth Circuit precedent and that therefore no violation of Barragan's Fourth Amendment rights occurred. Therefore, Barragan's Motion to Suppress is *DENIED*.