Amended Concurring and Dissenting Opinion by
NAKAYAMA, Acting C. J.
I respectfully dissent from the holding that Hawai'i law applies to petitioner’s suppression motion. The rules and analysis of this court’s unanimous decision in State v. Bridges, 83 Hawai'i 187, 925 P.2d 357 (1996), should control the outcome of today’s case. I believe Bridges was properly decided, and that a faithful application of Bridges requires applying federal law when considering admissibility of evidence obtained by federal agents on federal property.[1] I also dissent because the rule statements articulated by the majority do not provide clear enough guidance for the trial courts.
1. The Exclusionary Rule Test in Bridges
In Bridges, this court considered choice of law for a motion to suppress evidence obtained by Hawai'i and California state agents in California.[2] 83 Hawai'i at 188, 925 P.2d at 358. In that case, a Honolulu Police Department (HPD) narcotics team planned a sting operation to gather evidence of drug dealing. Id. The detectives arranged a drag exchange to take place in La Habra, California, then contacted local police to coordinate. Id. at 189, 925 P.2d at 359. The HPD installed audio-video monitoring equipment in a hotel room and fitted an undercover HPD agent with a body tape recorder. Id. On the HPD’s request, the La Habra police obtained a court order from a California court, authorizing the surveillance. Id. A drug exchange occurred, the surveillance equipment recorded evidence of the transaction, and the defendants were extradited from California to Ha-wai'i for trial. Id. At trial, defendants filed a *401 motion to suppress the recordings and the trial court granted the motion, concluding that the recordings were obtained in violation of a Hawai'i statute governing electronic surveillance. Id. at 194, 925 P.2d at 364. On appeal, the question presented to this court asked whether the evidence must be excluded because of the Hawai'i law violation, even though the recording was procured legally under California and federal law. Id. This court adopted the exclusionary rule analysis, and articulated three factors that a trial court must consider when resolving a motion to suppress evidence obtained in another jurisdiction: judicial integrity, individual privacy, and deterrence. Id. at 195, 925 P.2d at 365.
As to the first factor, the court reasoned that judicial integrity would not be tarnished by admitting the evidence because the HPD obtained the evidence legally under situs law, and because there is no forum law that applies extraterritorially to the HPD’s conduct. Id. at 197, 925 P.2d at 367. For the second factor, the court concluded that a defendant’s reasonable expectation of privacy is defined by the laws governing the site of surveillance, not by the laws governing potential future criminal trials. Id. at 199, 925 P.2d at 369. And finally, for the third factor, the court determined that public policy counsels in favor of requiring HPD agents to comply with situs law, preferably while working in concert with situs law enforcement, when investigating criminal activity outside of the state. Id. at 202, 925 P.2d at 372. Thus, analysis of each of the three factors supported admission of the recordings. Id.
B. Application of the Bridges Test
Application of the exclusionary rule test articulated in Bridges is straightforward, and, as shown below, results in permitting admission of the evidence in question. The first prong of the exclusionary rule analysis requires considering the impact of admitting the evidence on the integrity of the state’s judicial system. Bridges at 196, 925 P.2d at 366. Hawai'i courts must consider this factor to “ensure that evidence illegally obtained by government officials or their agents is not utilized in the administration of criminal justice through the courts”. Id. at 195, 925 P.2d at 365 (quoting State v. Pattioay, 78 Hawai'i 455, 468, 896 P.2d 911, 924 (1995)). In Bridges we concluded that the integrity of Hawai'i courts would not be diminished by admitting evidence obtained in another jurisdiction, provided that the evidence was obtained legally under that jurisdiction’s law. Id. at 197, 925 P.2d at 367. For support, the Bridges court cited cases from federal[3] and state[4] courts, as well as academic commentary[5]. To this list, we can now add many sister states[6] and federal courts[7] that have articulated similar rules. The fact that the evidence was procured legally under situs law does not guarantee admission of the evidence in Hawai'i courts, however, this step articulates a clear principle that evidence obtained illegally under situs law is not admissible in our courts. Application of this rule is straightforward; in the case at hand, *402 the evidence was obtained on federal property and in compliance with federal law, and thus the judicial integrity factor of the exclusionary rule test does not require excluding the evidence.
The second factor of the exclusionary rule test requires the court to consider whether admitting the evidence violates the principle of individual privacy. In Bridges, we concluded that a defendant’s notions of individual privacy derive from the location in which the defendant is physically present at the time of search, and not from any prescient conception of the jurisdiction in which he or she may eventually be on trial. 83 Hawai'i at 199, 925 P.2d at 369 (“the scope of the defendants’ rights, as they might expect to exercise them on a day-to-day basis, is to be found within the realm of [situs] jurisprudence.”) (quoting United States v. Gerena, 667 F.Supp. 911, 917 (D.Conn.1987)). I would follow the analysis of Bridges and look to federal law to determine the defendant’s expectation of privacy while on federal property in this case. The Hawai'i Constitution is a capacious document, but an individual does not have a reasonable expectation that its protections extend to searches conducted beyond Hawaii’s borders. The facts of this ease illustrate my point. It is undisputed that the searches of Torres’s car “were conducted by federal law enforcement officers on [Pearl Harbor Naval Base], a closed military base that is enclosed by fences and is within the special maritime and territorial jurisdiction of the United States.” State v. Torres, 122 Hawai'i 2, 18, 222 P.3d 409, 425 (App.2009) (brackets added). Moreover, the ICA observed that (1) “[visitors to [Pearl Harbor Naval Base] are warned that they are entering ‘U.S. NAVY PROPERTY[,]’ “[8] (2) Pearl Harbor Naval Base “is subject to the control of a military commander who has the authority to restrict entry onto the base,” and (3) the base “has its own federal police force.” Id. In light of these facts, the belief that the Hawai'i Constitution governs privacy rights on the federal military base is unreasonable. Thus, with regard to the individual privacy factor of the exclusionary analysis, I would follow the logic of Bridges to hold that the contours of Torres’s right to privacy should be defined according to the federal law that governs those present on Pearl Harbor Military Base. The fact that those privacy rights were not violated counsels against suppression of the evidence in this case.
Finally, the third factor of the exclusionary rule analysis, deterrence, “refers to our expectation that after evidence is suppressed based on particular police conduct in one case, in the future, police officers will refrain from that type of conduct and will instead act in a manner that would not lead to suppression of evidence.” 83 Hawai'i at 199, 925 P.2d at 369. As this court noted in Bridges, and as today’s majority opinion readily concedes, it is unlikely that the exclusion of relevant evidence in this case would deter federal agents from violating Hawai'i constitutional law. Id.; Majority at ---, 262 P.3d at 1020-21. Excluding the evidence in today’s case does not further the policy of deterring illegal police conduct, and counsels against suppressing the evidence at issue. Thus, considering the three factors of the exclusionary rule test from Bridges results in permitting admission of the evidence in this case.
C. The Majority’s Criticism of Bridges
The majority cites three main reasons for departing from the analysis in Bridges; as *403 explained below, I find each reason to be unpersuasive. First, with regard to the individual privacy factor of the exclusionary rule analysis, the majority writes that
Bridges failed to consider that if state courts admitted evidence in a state prosecution that was obtained in a manner that would be unlawful under our constitution, our courts would necessarily be placing their imprimatur of approval on evidence that would otherwise be deemed illegal, thus compromising the integrity of our courts.
Majority at -, 262 P.3d at 1019. This is inaccurate; in Bridges the court explicitly stated:
The “judicial integrity” purpose of the exclusionary rule is essentially that the courts should not place their imprimatur on evidence that was illegally obtained by allowing it to be admitted into evidence in a criminal prosecution. Of course, when evidence is not obtained illegally, “no loss of judicial integrity is implicated in a decision to admit the evidence.”
83 Hawai'i at 196, 925 P.2d at 366 (quoting State v. Minter, 116 N.J. 269, 561 A.2d 570, 571 (1989)). This court clearly considered, and unanimously rejected, the majority’s reasoning in Bridges only fifteen years ago. Thus, this argument is not a persuasive reason to essentially overrule precedent.
While considering the individual privacy factor of the test, the majority writes “Bridges also indicated that a defendant’s privacy rights may be defined under the Hawai'i Constitution inasmuch as ‘one could argue’ that evidence obtained lawfully in Ha-wai'i under federal law but in violation of Hawai'i law should be suppressed in a state prosecution.” Majority at -, 262 P.3d at 1020. The majority cites a footnote from Bridges, which states:
Under this interpretation of the individual privacy rationale of our exclusionary rule, one could argue that evidence obtained in Hawai'i by federal officers in compliance with federal law (and therefore not illegally obtained) but in violation of some more restrictive aspect of Hawai'i law should be suppressed in criminal prosecutions in Ha-wai'i state courts.
83 Hawai'i 187, 199 n. 15, 925 P.2d at 369 n. 15 (emphasis added). In citing this footnote for support that the Bridges court believed the Hawai'i Constitution defined privacy rights, the majority reads this footnote far too expansively. The very holding of Bridges contradicts this reading. A more accurate reading recognizes that Bridges held that the Hawai'i courts will not abide admission of evidence that was obtained in violation of a criminal defendant’s privacy rights. However, we recognized that the Hawai'i Constitution simply does not apply everywhere, so those privacy rights are best defined by the laws of the situs jurisdiction. In Bridges, the evidence was obtained in California, so we held that California law determined the defendant’s conception of privacy; in the hypothetical of footnote 15, the evidence was obtained in Hawai'i, so we theorized that Hawai'i law may define the defendant’s privacy, even though federal agents gathered the evidence. Therefore, this argument offered to support the majority’s new reasoning is unpersuasive.
And finally, with regard to deterrence, the majority reasons that the evidence in this case should be excluded in order to “deter any federal and state cooperation ‘to evade state law.’” Majority at -, 262 P.3d at 1020. In articulating this consideration, the majority overlooks the fact that the Bridges decision already accounts for such a situation. As the court wrote in Bridges, any indication that law enforcement is strategically conducting search activities with the purpose of evading Hawai'i law would support exclusion in that instance. 83 Hawai'i at 202, 925 P.2d at 372. However, where, as here, there is no indicia of evasion or foul play, the analysis of the deterrence factor is straightforward, and weighs heavily against excluding otherwise probative evidence. The majority’s argument as to this point is, therefore, unpersuasive.
Having rejected the analysis from Bridges, the majority then articulates unclear, new standards. The majority opinion begins with a review of four principled approaches that other jurisdictions have adopted to analyze admissibility of evidence obtained extraterri-torially: (1) choice of law analysis, (2) exclu *404 sionary rule analysis, (3) automatic application of forum law, and (4) reverse silver-platter. Majority at -, 262 P.3d at 1013-14. The majority then proceeds to articulate rales for Hawaii courts that are an unclear amalgam of the exclusionary rule analysis from Bridges and the forum law approach.[9] For example, the majority summarizes its holding as follows:
We hold that where the State seeks to prosecute a defendant in a Hawaii state court, and seeks to admit evidence obtained in another jurisdiction, the court must give due consideration to the Hawaii Constitution and applicable case law, as indicated herein, when assessing whether such evidence is admissible against the defendant.
Majority at ---, 262 P.3d at 1007-08 (emphasis added). The majority cites no case law explaining the meaning of the “due consideration” standard. As I read the majority opinion, the holding today requires articulation of Hawaii Constitutional standards, but permits a trial court to overlook Constitutional violations in some undefined situations.
As to judicial integrity, the majority writes, “where the admission of evidence obtained in another jurisdiction would violate our constitution, the court must give substantial weight to the fact that such admission may compromise the judicial integrity of the courts.” Majority at ---, 262 P.3d at 1019 (footnote omitted, emphasis added). The majority opinion provides no real guidance to litigants or trial courts, noting only that “there may be circumstances in which an intrusion upon a defendant’s privacy rights, as defined by Hawaii law, may be of a minimal nature, such that admission of the evidence would not substantially weigh on judicial integrity.” Majority at --- n. 22, 262 P.3d at 1019 n. 22. Then, under the privaey rights step of the analysis, the majority writes: “our exclusionary rale analysis requires the defendant’s privacy rights, as defined by the Hawaii Constitution and applicable case law, be given substantial weight when another jurisdiction’s law is involved.” Majority at -, 262 P.3d at 1020 (emphasis added).
In articulating this “substantial weight” standard, the majority replaces the clear rules from Bridges with a conundrum. As applied to this ease, there is little analysis needed; the majority simply notes that because “Petitioner’s privacy rights under the Hawaii Constitution were not invaded by the searches in this ease, the individual privacy rights prong of our exclusionary rule analysis does not weigh in favor of suppression. In that vein, judicial integrity would not be compromised.” Majority at ---, 262 P.3d at 1023. However, the rules do not provide guidance to trial courts considering factual scenarios like that in Bridges where the evidence is legally obtained by situs jurisdiction law, but unconstitutionally obtained by Hawaii standards. At trial, the parties will certainly dispute, and the trial court will be left to determine, whether the constitutional violation before them may be overlooked. The “substantial weight” standard is simply too murky for trial courts to utilize and apply consistently.
The court need not muddy the waters in this area of law. I anticipate that trial courts will have difficulty determining whether the Hawaii Constitution applies, I believe a more straightforward rule is necessary, and I therefore dissent from the standards articulated in the majority opinion. I would follow the precedent established in Bridges, and hold that Hawaii courts must analyze the admissibility of evidence obtained by federal *405 agents on federal property under federal law in this ease.

. I note that the majority's holding purports to cover all evidence offered in Hawai'i but obtained in another jurisdiction, regardless of where and by whom it was obtained. Majority at ---, 262 P.3d at 1021. As explained below, in my view, the analysis changes depending upon those very important facts. Because the question before the court is a narrow question involving federal agents acting independently and on federal property, I would constrain the holding to the facts presented and not issue a holding broad enough to include all factual scenarios.

. The trial proceeded in Hawai'i courts, therefore Hawai'i is the "forum jurisdiction.” The evidence was procured in California, therefore California is the “situs jurisdiction.”

. U.S. v. Gerena, 667 F.Supp. 911 (D.Conn.1987).

. Menefee v. State, 640 P.2d 1381 (Okla.Crim.App.1982); State v. Cooper, 223 Kan. 175, 573 P.2d 1006 (1977); People v. Blair, 25 Cal.3d 640, 159 Cal.Rptr. 818, 602 P.2d 738 (1979).

. 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 1.5(c) (3d ed. 1996).

. See D'Antorio v. State, 837 P.2d 727, 731 (Alaska App.1992)(applying Ohio law to evidence obtained in Ohio but admitted to Alaska court); Echols v. State, 484 So.2d 568, 571-72 (Fla.1985)(examining evidence obtained in Indiana by Indiana law for admission into Florida court); State v. Engel, 249 N.J.Super. 336, 592 A.2d 572, 588 (N.J.Super.Ct.App.Div.1991) (applying New York standards for evidence obtained in New York but admitted in New Jersey); Frick v. State, 634 P.2d 738, 741 (Okla.Crim.App.1981)(Oklahoma court admits evidence obtained in Virginia because it was legally obtained under Virginia law); Commonwealth v. Bennett, 245 Pa.Super. 457, 369 A.2d 493, 494-95 (1976) (applying New Jersey law for evidence obtained in New Jersey but admitted in Pennsylvania courts).

.See United States v. Barragan, 589 F.Supp.2d 1012, 1015 (S.D.Ind.2008); United States v. Ozuna, 129 F.Supp.2d 1345, 1352 (S.D.Fla.2001); and United States v. Longo, 70 F.Supp.2d 225, 261 (W.D.N.Y.1999); United States v. Restrepo, 890 F.Supp. 180, 191 (E.D.N.Y.1995); and United States v. Ferrara, 771 F.Supp. 1266, 1302 (D.Mass.1991).

. More specifically, the ICA observed that "there was a sign posted in front of Makalapa Gate entrance ... that warned visitors that they were entering ‘U.S. NAVY PROPERTY’ and that 'AUTHORIZED PERSONNEL ONLY’ were welcome.” Torres, 122 Hawai'i at 15, 222 P.3d at 422. The sign also read:
AUTHORIZED ENTRY ONTO THIS INSTALLATION CONSTITUTES CONSENT TO SEARCH OF PERSONNEL AND THE PROPERTY UNDER THEIR CONTROL. INTERNAL SECURITY ACT OF 1950 SECTION 21; 50 U.S.C. 791
The sign was posted on a fence approximately fifty feet from the guard shack. A person reading the sign would have already turned onto [Pearl Harbor Naval Base], but the guard at the guard shack would allow a person to turn around if he or she chose not to enter [Pearl Harbor Naval Base] after reading the sign. Torres had worked at the Makalapa Gate prior to May 1, 1992, and was familiar with the sign. Id. at 15-16, 222 P.3d at 422-23.

. To support their new test, the majority cites cases from our sister state of Oregon. Majority at ---, 262 P.3d at 1014-16. This is particularly curious for two reasons. First, the Oregon cases held that trial courts must follow the Oregon Constitution in every case; this is not the test adopted by the majority, which, as noted above, permits the trial courts to disregard the Hawaii Constitution in some cases. Second, as the majority recognizes, the Bridges court referenced die same cases. However, it is inaccurate to say, as the majority does, that "Bridges thus acknowledged the persuasiveness” of Oregon's approach. Majority at ---, 262 P.3d at 1015. It would be more accurate to say that the Bridges court acknowledged and explicitly rejected Oregon’s approach; the very holding of Bridges — • which held that the court should apply California law instead of Hawaii law — belies the majority’s inference.